## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLIFFORD GARDNER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-971-M |

## REPORT AND RECOMMENDATION

Plaintiff Clifford Gardner brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 10, hereinafter "R. _").[1] The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on August 29, 2012, alleging that the following conditions limit his ability to work: arthritis in knees, back, and spine; rheumatoid arthritis in back and neck; hearing loss in both ears; high blood pressure; and fatigue. R. 136-43, 189-91, 193. Plaintiff alleged a disability onset date of June 1, 2012. R. 189-91. Following denial of his application initially and on reconsideration, a hearing was conducted before an Administrative Law Judge ("ALJ"), where a vocational expert ("VE") testified. R. 29-83, 87-89. The ALJ issued an unfavorable decision on September 25, 2014. R. 11-24. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-6; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); 20 C.F.R. § 404.1520, 1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2012, the alleged onset date. R. 13; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of osteoarthritis of the neck, lower back, and bilateral knees. R. 13-18; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18-19; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 19-22; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff had the RFC "to perform the full range of light work," except that Plaintiff

> is limited to lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently; standin[g] and/or walking about 6 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday; no more than frequent climbing of ramps/stairs; no more than occasional stooping, kneeling, crouching, crawling, or climbing of ladders/ropes/scaffolds.

R. 19; *see* 20 C.F.R. § 404.1567(b) (defining "light work"). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work and that transferability of job skills was not a material issue. R. 22; *see* 20 C.F.R. § 404.1565, .1568.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the testimony of the VE regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ found that Plaintiff could perform occupations such as bench assembler, information clerk, and hand finisher of toy equipment, all of which offer jobs that exist in significant numbers in the national economy. R. 23; *see* 20 C.F.R. § 404.1545(a)(5)(ii). On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 1, 2012, through the date of the decision. R. 23; *see* 20 C.F.R. § 404.1520(g).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

3

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff's appeal of the SSA's decision centers on Plaintiff's mental disorders of anxiety and depression.[2] Plaintiff states that the ALJ "appeared to concur with the DDS

---

[2] Plaintiff also briefly mentions his back and knees as being inadequately considered, *see* Pl.'s Br. (Doc. No. 12) at 14, 20, but to obtain judicial review it is insufficient to merely "suggest dissatisfaction" or mention an issue in the context of another matter. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). Plaintiff's hint of an argument fails to develop a sufficient legal or factual basis for reversal, and the undersigned will not speculate or develop appellate arguments on his behalf. *See id.*; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

4

doctor[s] that [Plaintiff's] mental disorders were non-severe impairments," and argues that his mental disorders instead should have been considered to be severe. Pl.'s Br. (Doc. No. 12) at 6, 9. Plaintiff next argues that, because even nonsevere impairments must be considered when determining a claimant's RFC, the ALJ erred in failing to consider his mental disorders in the RFC analysis. *Id.* at 11.

   A. *The ALJ's Step-Two Finding*

As an initial matter, the Commissioner disagrees with Plaintiff's contention that the ALJ found that Plaintiff's mental disorders were nonsevere impairments. Instead, the Commissioner argues that the ALJ found that Plaintiff did not have any medically determinable mental impairments, and that this finding "was clear and reasonable." Def.'s Br. (Doc. No. 18) at 7.

Under SSA regulations, a finding of disability requires the existence of a medically determinable impairment. *See* 20 C.F.R. § 404.1527(a)(1) (prescribing that disability is the inability "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 404.1508. The existence of a medically determinable impairment must be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* And "all of [the claimant's] medically determinable

impairments" must be considered in the RFC determination. *Id.* § 404.1545(a)(2); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairments or combination of impairments, including the impact of any related symptoms.").

Here, although not expressly stated, the ALJ's decision most reasonably reflects that he considered Plaintiff's mental disorders to be medically determinable impairments but found those impairments to be nonsevere. In reviewing Plaintiff's medical records at step two of the analysis, the ALJ noted that in July 2012 Jerry White, PhD, diagnosed Plaintiff with adjustment disorder with anxiety and depression. R. 15; *see* R. 304. The ALJ also described, and stated he gave "significant weight" to, the opinions of state agency consultants Ron Cummings, PhD, and "CCG," PhD, who assessed Plaintiff's mental functioning in, respectively, December 2012 and May 2013. R. 16, 17, 22; *see* R. 60-62 (Dr. Cummings' consultative review done Dec. 19, 2012), 72-74 (Dr. CCG's consultative review done May 28, 2013). As noted by the ALJ, both consultants in their Psychiatric Review Assessments determined that Plaintiff had the medically determinable impairments of affective disorders and anxiety disorders, and that these impairments were nonsevere. *See* R. 16-17, 62, 73.[3] The ALJ specifically noted the findings that led Dr. Cummings to conclude that Plaintiff's mental impairments were not severe: "Dr. Cummings found that the evidence showed that the claimant had no restriction of

---

[3] All three psychologists also diagnosed Plaintiff with substance addiction, but Plaintiff has not brought arguments regarding that diagnosis. *See* R. 61, 73, 304.

6

activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration." R. 16; *see* R. 61; *see also* R. 73 (Dr. CCG's findings of no limitations in any of the four functional areas); 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

The ALJ's detailed discussion of the medical evidence regarding Plaintiff's mental disorders indicates that he considered those disorders. The ALJ expressly found that one condition claimed by Plaintiff—rheumatoid arthritis—was not a medically determinable impairment. R. 18. He did not say the same of the mental disorders. Further, the ALJ expressly found that another of the conditions claimed by Plaintiff—osteoarthritis—was a severe impairment. R. 13. He did not say the same of the mental disorders. Though the ALJ did not explicitly state that he found Plaintiff's mental disorders to be medically determinable but nonsevere impairments, that is the plain impact of his discussion and findings. "[T]he form of words should not obscure the substance of what the ALJ actually did." *Doyal*, 331 F.3d at 761.

B. *Any Step-Two Error Regarding the Severity of Plaintiff's Mental Impairments Was Harmless*

Having determined that the ALJ found that Plaintiff had the medically determinable mental impairments of anxiety and depression, the undersigned agrees that

7

Plaintiff properly frames the initial question as whether the ALJ erred at step two in finding that these impairments were nonsevere. Even assuming an affirmative answer to this query, however, the occurrence of this type of step-two error does not necessarily require reversal of an unfavorable decision. Such an error is harmless if the ALJ continues past step two and, in evaluating the claimant's RFC and making consequent determinations, considers the combined effect of all functional limitations caused by all of the claimant's impairments, whether severe or nonsevere. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

The resulting question is whether Plaintiff has established that there were functional limitations arising from his mental disorders that the ALJ should have, but failed to, include in the RFC. Plaintiff generally argues that the ALJ failed to consider the diagnoses of anxiety and depression in determining his RFC. *See* Pl.'s Br. at 11. Remand is not required on this basis for several reasons.

First, the ALJ recognized that in assessing Plaintiff's RFC, he "must consider all the claimant's impairments, including impairments that are not severe." R. 12. The ALJ specifically stated in his decision that he considered Plaintiff's impairments both singularly and in combination with respect to physical and mental functioning:

> [T]he [ALJ] has considered all the evidence of record, including medical evidence, clinical and laboratory tests, and statements in the record, to determine what impairment, or combination of impairments, interfere with the claimant's normal physical and mental functioning. This included those

exhibits not cited in the decision, as well as those exhibits that are specifically cited.

R. 19; *see also, e.g.*, *id.* (stating that "the entire record" and "all symptoms" were considered in reaching the RFC). "Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." *Wall*, 561 F.3d at 1070 (alteration and internal quotation marks omitted).

Second, a mere finding of a medically determinable impairment, absent any accompanying functional limitations, does not affect the RFC. *See* Pl.'s Br. at 6, 11; R. 304; *Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007) (noting that the diagnosis of a condition does not establish disability, as the question is whether an impairment significantly limits the ability to work). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairments or combination of impairments . . . ." SSR 96-8p, 1996 WL 374184, at *1. "The mere presence of a condition is not necessarily disabling. Rather, a condition, alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (alterations and internal quotation marks omitted).

It is Plaintiff's burden to provide evidence to the Commissioner of limitations and restrictions caused by his medically determinable impairments. *See Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). Plaintiff points to two possible limitations arising from his mental disorders that he argues should have been included in the RFC: the

overall functioning limitations reflected by a Global Assessment of Functioning ("GAF") score of 45, and the functioning limitations caused by stress.

1. GAF Score

Plaintiff argues that the ALJ did not properly consider Dr. White's opinion that Plaintiff had a GAF score of 45. *See* Pl.'s Br. at 6; R. 304. To the extent that this may be construed as an argument that Plaintiff's mental disorders resulted in functional limitations that should have been included in the RFC, the argument fails because substantial evidence supports the ALJ's conclusion to the contrary.

A GAF score "represents a clinician's judgment of the individual's overall level of functioning" at a given time, using a scale of 1 to 100. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) [hereinafter DSM-IV]. "A GAF score of 41–50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (alterations and omission in original) (quoting DSM-IV at 34). However, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Richards v. Colvin*, 640 F. App'x 786, 791 (10th Cir. 2016) (internal quotation marks omitted). GAF scores alone do not indicate "particular symptoms," or any effect on a claimant's "functional abilities," and therefore are not, "by themselves, considerable evidence" of disability. *Id.* (internal quotation marks omitted). Indeed, "[t]he most recent edition of the *DSM* omits the GAF scale 'for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its

descriptors) and questionable psychometrics in routine practice.'" *Id.* (quoting Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). A GAF score is not necessarily "significantly probative evidence," and failure to discuss a GAF score does not demonstrate error in an ALJ's decision. *Richards*, 640 F. App'x at 791; *accord Kearns v. Colvin*, 633 F. App'x 678, 682 (10th Cir. 2015).

Here, however, the ALJ did not fail to discuss Plaintiff's GAF score. R. 15. Further, in addition to expressly noting Dr. White's GAF assessment, the ALJ discussed other evidence indicating that Plaintiff's mental impairments had not resulted in functional limitations. Most noticeably, as detailed above, the ALJ considered the Psychiatric Review Assessment completed by Dr. Cummings, including the opinion that Plaintiff had "no restriction of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration." R. 16, 61. The ALJ also considered the second concurring medical opinion that Plaintiff's "medical disorders were non-severe impairments." R. 17, 72-74; *see also* R. 73 (Dr. CCG's findings of no limitations in any of the four functional areas). The ALJ noted that during another consultative examination, Plaintiff "reported no . . . nervousness, anxiety or depression." R. 16; R. 315. The ALJ reviewed Plaintiff's statements, including Plaintiff's statement in his Function Report that he "handles stress and changes in routine 'okay.'" R. 20; *see* R. 206. The ALJ also reviewed Plaintiff's statements regarding his activities of daily living and Plaintiff's report that he has "no problem with personal care and needs no special reminders to take care of personal needs and grooming," "has no problem paying

attention, and "follows written and spoken instructions well." R. 20, 22; *see* R. 202, 205. Referencing Plaintiff's testimony at the administrative hearing, the ALJ noted that Plaintiff stated "he has [had] no treatment for anxiety or depression." R. 21; *see* R. 39. Finally, the ALJ considered that Plaintiff had received unemployment benefits during the period of time he alleges he was disabled and "there is no believable evidence of record that the claimant advised the [Oklahoma Employment Security Commission] . . . that he had any limitations, physical[,] psychological or otherwise, that would restrict or limit his ability to seek and accept suitable work as required by Oklahoma law." R. 21-22. The undersigned finds no error in the ALJ's failure to include any limitation in the RFC addressing the GAF score.

2. Stress

Plaintiff further argues that, because Plaintiff was released from the military due to stress, further consideration should have been given to "the impact of stress on his ability to do work." Pl.'s Br. at 12 (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985)). To the extent this can be construed as an argument that the RFC should have included functional limitations addressing stress, the argument fails.[4] The ALJ reviewed Plaintiff's mental health history as self-reported to Dr. White:

> The mental health history as presented by the claimant [is] that his only history of treatment by mental health professionals was during his brief

---

[4] To the extent Plaintiff suggests that the ALJ erred by failing to consider this evidence at all, the argument also fails. Aside from expressly noting the fact of the military finding of stress and citing Plaintiff's testimony indicating no current limitations from stress, the ALJ stated that he considered all evidence of record in making his determinations. R. 11, 13, 18, 21.

12

stint in the military. He was released from the military before completing basic training after being assessed by the military's mental health staff "because of stress."

R. 14; *see* R. 301. Together with the evidence indicating that Plaintiff was not functionally restricted by his mental impairments, discussed above, the ALJ specifically noted that in a September 25, 2012 Function Report, Plaintiff "stated he handles stress and changes in routine 'okay.'" R. 20; *see* R. 206.

The undersigned's review of the record indicates that Plaintiff served in the military for approximately three weeks, some 30 years prior to the alleged onset date. *See* R. 136 (showing military service from July 29, 1982 to August 18, 1982). Plaintiff has pointed to no evidence in the record showing that during the relevant time period stress resulted in any functional limitation for him. The undersigned finds no error in the ALJ's failure to include any limitation in the RFC addressing stress.

### 3. Conclusion

In sum, even if the ALJ should have labeled Plaintiff's anxiety and depression as severe impairments, that error was harmless because the record does not reflect functional limitations arising from those impairments that the ALJ failed to consider or that were erroneously omitted from the RFC. As set forth above, there is substantial evidence to support the ALJ's RFC determination, and to the extent there are evidentiary conflicts in the record they were for the ALJ to resolve. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012). Concluding otherwise would require the Court to reweigh the evidence, a task it may not perform. *See Allman*, 813 F.3d at 1333; *Qualls v. Apfel*, 206 F.3d 1368, 1371

(10th Cir. 2000).[5] When viewed in its entirety, the "ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he adequately considered [Plaintiff's] alleged impairments." *Wall*, 561 F.3d at 1070 (internal quotation marks omitted); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005) (evaluating whether decision was supported by substantial evidence and free of legal error "based on . . . the ALJ's decision as a whole").

*C. Any Error in Making Express "Special Technique" Findings Was Harmless*

Plaintiff additionally argues that the ALJ failed to apply the "special technique" required by regulation for evaluation of severity of mental impairments. Pl.'s Br. at 14-16; *see* 20 C.F.R. § 404.1520a. The ALJ reviewed and gave "great weight" and "significant weight" to Dr. Cummings' Psychiatric Review Assessment and the specific findings therein regarding any functional limitation Plaintiff experienced in the four broad functional areas. *See* R. 16, 18, 22. The ALJ did not, however, specifically and expressly state that he agreed with Dr. Cummings' findings that Plaintiff had no restrictions in any of the four functional areas considered under the "special technique." *See* R. 13-19 (ALJ's evaluation at steps two and three).

---

[5] As an extension of the above argument, Plaintiff also asserts that in his hypothetical to the VE the ALJ failed to include limitations caused by Plaintiff's mental impairments. *See* Pl.'s Br. at 13-14. Because Plaintiff has not shown that additional limitations should have been included in the RFC, Plaintiff's challenge to the VE hypothetical also fails. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (holding that VE hypothetical was sufficient because "it contained all of the limitations found to exist by the ALJ"); *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding ALJ was not required to accept VE's answer to hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record").

Thus, it is at least arguable that the ALJ's application of the "special technique" did not comply with the regulatory requirements. *See Rose v. Colvin*, 634 F. App'x 632, 636 (10th Cir. 2015) ("special technique" requires the ALJ to evaluate the claimant's symptoms, signs, and laboratory findings; rate the degree of functional limitation to determine the severity of the claimant's mental impairments; and document application of the technique in the decision); 20 C.F.R. § 404.1520a; *but cf. Doyal*, 331 F.3d at 76 ("While the ALJ did not use the phrase 'I find' in connection with conclusion . . ., the form of the words should not obscure the substance of what the ALJ actually did."). This issue need not be decided, however. Even if the ALJ's decision does not adequately document the required findings, any error was harmless because—for substantially the same reasons set forth above—Plaintiff has not established that the ALJ's RFC assessment of no mental limitations was not supported by substantial evidence or, more specifically, that there were any limitations in the four functional areas that the ALJ should have considered (and found) but did not. *Cf. Rose*, 634 F. App'x at 636 (finding failure to document "special technique" harmless when ALJ considered functional limitations at step four); *Thompson v. Colvin*, 551 F. App'x 944, 946–47 (10th Cir. 2014) (finding failure to document "special technique" harmless when ALJ's later findings established that plaintiff's mental impairments were not disabling).

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

15

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 1, 2016. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 11th day of August, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE